UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ADVANTUS, CORP.
and OT LIGHTING BUYER, LLC,

                                    CASE NO.:

      Plaintiffs,

v.

MICHAEL EGAN,

      Defendant.

_____/

## COMPLAINT

## PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF REQUESTED

Plaintiffs, Advantus, Corp. ("Advantus") and OT Lighting Buyer, LLC, sue Defendant, Michael Egan ("Egan"), and allege as follows:

## NATURE OF THE ACTION

1.     In an effort to extort money from Advantus, Egan, a prior employee of OttLite Technologies, Inc. ("OttLite, Inc."), from which Advantus purchased certain assets as set forth herein, is threatening to immediately disclose Advantus' trade secret information to Advantus' customers and to interfere with a specific, identified customer relationship if Advantus does not pay him bonus money he alleges OttLite, Inc. owes him. Egan's threatened conduct is malicious, intended

solely to harm Advantus, would provide him no actual benefit other than harming Advantus, and is not subject to any qualified privilege.

2.    As a result of the foregoing, Advantus seeks preliminary and permanent injunctive relief to prevent threatened tortious interference with an advantageous business relationship and to prevent Egan from carrying out his direct written threats to disclose certain of Advantus' confidential and trade secret information. Advantus did not acquire all of OttLite, Inc.'s debts and has no liability to Egan for sums he claims he is due from OttLite, Inc. Advantus does not, however, dispute that Egan can, if he wishes, pursue a claim against Advantus for his bonus money to the extent he claims Advantus has successor liability arising from the asset sale (a claim the Advantus would dispute). Egan cannot, however, bypass the courthouse door and instead attempt to extort Advantus by his explicitly threatening to reveal trade secrets and interfering with a specific significant customer relationship that would eviscerate the value of the assets for which Advantus paid millions to OttLite, Inc. and many of its creditors, if Advantus does not pay his demands. Accordingly, in this action, Advantus seeks only the narrow remedy of preventing Egan from following through on his threats to disclose Advantus' confidential and proprietary information.

## PARTIES, JURISDICTION, AND VENUE

3.      Advantus is a Florida corporation with its principal place of business in Jacksonville, Duval County, Florida.

4.      OT Lighting Buyer, LLC is a Florida limited liability company with its principal place of business in Jacksonville, Duval County, Florida. Advantus is the sole member of OT Lighting Buyer, LLC.

5.      Egan is an individual who resides in Hillsborough County, Florida.

6.      Advantus asserts claims against Egan under the Defend Trade Secrets Act, 18 U.S.C. § 1831, *et seq*. Thus, this Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

7.      Further, this Court can exercise supplemental jurisdiction over Advantus' state law claim against Egan pursuant to 28 U.S.C. § 1367 because the state law claim is so related to the present action that it forms part of the same case or controversy.

8.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred or are occurring in this District to include, without limitation, Egan's actions threaten harm to Advantus at its principal place of business in Jacksonville, Duval County, Florida.

## GENERAL ALLEGATIONS[1]

**A.    Advantus Acquires Certain of OttLite, Inc.'s Assets, Including Customer Relationships and Confidential and Proprietary Pricing and Factory Information**

9.    Advantus is in the business of designing and manufacturing various products (in Jacksonville and in other domestic and overseas factories manufacturing products on Advantus' behalf), including office supplies, arts and crafts products, luggage, tactical gear, and luxury pool products, that it sells to retailers, wholesalers, catalogue sellers and end users throughout the Americas and the World.

10.    On October 25, 2023, OT Lighting Buyer, LLC, a special purpose limited liability company Advantus created for the purpose of acquiring the assets detailed herein, acquired certain assets of OttLite, Inc., a Delaware corporation. OttLite, Inc.'s business is the design, manufacture, marketing, and sale of lighting products, including, without limitation, office, craft, and home lighting products.

11.    Among the assets Advantus purchased from OttLite, Inc., were its manufacturing operations, relationships with factories overseas, accounts receivable, inventory, and long-standing relationships with its customers for the

---

[1] In accord with Federal Rule of Civil Procedure 65 and Local Rules 6.01 and 6.02, Advantus sets forth the specific, detailed facts supporting this Complaint and the related Motion for Temporary Restraining Order and Preliminary Injunction and Incorporated Memorandum of Law in the Declarations of Kevin Carpenter and Doug May, attached hereto as **Exhibits A and B**, respectively. Advantus has attached these Declarations in lieu of verifying this Complaint as no one person has personal knowledge of all the facts set forth herein.

sale of OttLite, Inc.'s products, many of which customers were, prior to the acquisition, already Advantus' customers on other product lines. Advantus is significantly bigger than OttLite, Inc. and Advantus has a broader array of product lines and product categories that it sells to the former customers of OttLite, Inc. whose product lines were limited to lighting products. Contemporaneously with acquiring these assets, Advantus hired several of OttLite, Inc.'s employees and formed the OttLite business unit within Advantus to continue to sell OttLite products to OttLite, Inc.'s customers.

12.    The reason Advantus agreed to pay such a significant amount of consideration to OttLite, Inc. for the assets was due to OttLite, Inc.'s ongoing customer relationships and history of sales of its products to the same customers to whom Advantus was already selling various product lines. These customer relationships included all of OttLite, Inc.'s proprietary and confidential data and information relating to those customers, products, and accounts. Such information and data included, but was not limited to, OttLite, Inc.'s confidential and proprietary customer pricing and program information (the "Pricing Information"), including price lists, product development, sales histories, and price quotes, which OttLite, Inc. had developed and compiled over many years through its business relationships, and information regarding the capabilities of

OttLite, Inc.'s factories used for manufacturing lighting products and the cost of manufacturing such products (the "Factory Information").

13.    The Pricing Information is unique to each customer and derives significant, independent economic value because, among other things, any pricing variations among various customers are not shared among them. Each customer negotiates the prices they will pay for each product. As such, different customers pay, by negotiated agreement, different rates for the same or similar products. OttLite, Inc. needed, and now Advantus needs to, keep such information confidential because if customers know who pays what for a product, all customers will insist on getting a matching price to the lowest price being paid. The customers themselves also mandate that manufacturers keep this information confidential because the customers do not want the public at large to know what customers pay for products in comparison to the price at which they sell a product. Customers also do not want their competitors to know their negotiated buy-price on a particular product because otherwise the particular customer would potentially lose its negotiated competitive edge to its competitor, either because the higher paying customer would obtain a lower price to match the lower paying customer, or the lower paying customer could figure out exactly where to undercut the higher paying customer. Accordingly, it is industry standard that

both manufacturers and customers keep this type of negotiated Pricing Information highly confidential.

14.    The Factory Information is also valuable and derives significant, independent economic value because, among other things, Factory Information is not shared with customers or competitors. OttLite, Inc. (and now Advantus) sells its lighting products to large retailers that, in turn, sell the lighting products to end users. These large retailers often try and form relationships with manufacturing factories to try and disrupt the supply chain and obtain products directly from the factories. These lighting products are typically not patented. Thus, if Advantus' customers knew the capabilities and the cost to manufacture products of Advantus' factories, the customers themselves could go straight to the factories to purchase the products and completely cut Advantus out of the transaction. Accordingly, it is industry standard to keep this type of Factory Information highly confidential.

**B.    OttLite, Inc. Previously Employed Egan as an Account Manager and Provided Egan Limited Access to the Pricing and Factory Information to Use Solely for OttLite's Benefit**

15.    For approximately four years prior to Advantus' purchase of certain of OttLite, Inc.'s assets, OttLite, Inc. employed Egan as a National Account Manager. As a National Account Manager, Egan was responsible for, among other things, sales to customers he serviced.

16.     Certain of OttLite, Inc.'s customers that Egan serviced made up a significant portion of OttLite, Inc.'s business, including its biggest customer, (the "Retailer"), for which Egan provided services across the Retailer's locations in multiple countries.[2] For the past several years, the Retailer generated between $11,000,000 to $25,000,000 in revenue annually.

17.     During the time Egan represented OttLite, Inc. to certain of its customers, including the Retailer, OttLite, Inc. provided Egan limited access to its Pricing and Factory Information for the particular product lines and customers Egan serviced, and solely for the purpose of Egan negotiating sales to the particular customers to which the Pricing and Factory Information applied.

18.     Given that OttLite, Inc. knew certain of its Pricing and Factory Information would be shared with Egan, as set forth above, and because OttLite, Inc. knew Egan would be directly interacting with OttLite, Inc.'s customers, Egan was required as a condition of his employment with OttLite, Inc. to enter into a Confidentiality and Noncompetition Agreement (the "Confidentiality Agreement") containing, among other restrictions, non-disclosure and

---

[2] The identity of the Retailer, as well as other information at issue such as pricing, is redacted in the Complaint and attachments thereto, including the Declarations, to protect the confidentiality of the information. Advantus has filed a Motion for Leave to File Under Seal contemporaneous herewith in order to file an un-redacted version of the Complaint and Declarations, including attachments thereto, with the Court.

confidentiality provisions, to protect OttLite, Inc.'s Pricing and Factory Information.

19.    Further, OttLite, Inc.'s Pricing and Factory Information were shared only on a "need to know" basis, including the information it shared with Egan. OttLite, Inc. undertook great effort and expense to derive its pricing for its various customers, which was developed through extensive negotiation over many years with customers, and likewise undertook great effort and expense to identify and develop relationships with factories to manufacture OttLite, Inc.'s products, which relationships were also developed over the course of many years.

20.    OttLite, Inc. only shared the Pricing and Factory Information with Egan because he needed to have it to carry out his job duties for OttLite, Inc., and because it had put its trust and confidence in him, as its National Account Manager, that he would act only in the best interests of OttLite, Inc., would use the Pricing and Factory Information solely for OttLite, Inc.'s benefit, and would comply with his contractual obligations to keep the information confidential per the Confidentiality Agreement.

21.    OttLite, Inc. never authorized Egan to share the Pricing Information with any customer other than the particular customer to which particular prices applied. OttLite, Inc. also never authorized Egan to share the Pricing Information with OttLite, Inc.'s competitors, and certainly never allowed Egan to share the

Factory Information (capabilities and pricing at the factory) with any customer or competitor. OttLite, Inc. would not have provided the Pricing or Factory Information to Egan if he were going to share it among OttLite, Inc.'s customers and/or competitors.

22.     OttLite, Inc. instructed Egan and he understood—and indeed, agreed in the Confidentiality Agreement—that the Pricing and Factory Information was to be kept confidential.

23.     Other than OttLite, Inc.'s senior management, National Account Managers, including Egan, the particular customers to which the prices applied, and OttLite, Inc.'s manufacturing and product development consultant(s) as necessary, OttLite, Inc. did not provide the Pricing or Factory Information to any other person or entity. Indeed, Advantus did not even know OttLite, Inc.'s Pricing or Factory Information until shortly before it consummated the purchase of certain of OttLite, Inc.'s assets. OttLite, Inc. only allowed Advantus access to this information after Advantus first agreed to keep this information confidential and not disclose it to any person or entity through an express, written nondisclosure agreement.

24.     Neither the Pricing nor Factory Information can be determined by any publicly available means. With respect to the Pricing Information, OttLite, Inc.'s customers also kept and expected the Pricing Information to be kept confidential.

C.  **Egan Files Suit Against OttLite, Inc., Advantus Acquires Certain Assets of OttLite, Inc. and Egan Threatens to Disclose the Pricing and Factory Information**

25.    Through its acquisition of certain of OttLite, Inc.'s assets, effective October 25, 2023, Advantus now has expanded customer relationships to include sales of OttLite, Inc.'s lighting products. This includes, but is not limited to, customers for which Egan has knowledge of OttLite, Inc.'s (now Advantus') Pricing and Factory Information with respect to the OttLite products.

26.    On September 22, 2023, OttLite, Inc. terminated Egan's employment. OttLite, Inc. requested that Egan return his company-issued laptop, which contains various confidential and trade secret information, including the Pricing and Factory Information, but Egan refused.

27.    On or about September 26, 2023, prior to Advantus acquiring certain of OttLite, Inc.'s assets, Egan filed a lawsuit against OttLite, Inc. claiming that OttLite, Inc. failed to pay Egan bonus money in the amount of $18,000. OttLite, Inc. does not appear to have defended the lawsuit but, instead, Egan obtained a default final judgment for approximately $18,000 against OttLite, Inc.

28.    On October 20, 2023, Egan emailed Advantus' President, Kevin Carpenter, and claimed that OttLite, Inc. owed him $18,912 in unpaid bonus money. Egan's October 20, 2023 email stated "now that Advantus owns OttLite, Advantus inherits this problem and lawsuit." Egan further stated that he would

drop his lawsuit against "OttLite/Advantus" (although Advantus was not and has not been named in the lawsuit, and did not own any OttLite, Inc. assets on October 20) and return his OttLite, Inc. laptop if Advantus paid him the claimed OttLite, Inc. bonus by the end of October.

29.    On October 26, 2023, Egan copied Mr. Carpenter on an email to a former member of OttLite, Inc.'s senior management, wherein Egan stated "[o]ne way or another I will get the money owed to me."

30.    On the afternoon of November 22, 2023, the day before Thanksgiving, Egan emailed two former members of OttLite, Inc.'s senior management, Doug May and Mr. Forsell (both of whom by then worked for Advantus' newly created OttLite business unit), and threatened to economically harm Advantus by both disclosing OttLite, Inc.'s (now Advantus') Pricing and Factory Information to OttLite's customers, including its largest customer, the Retailer, and encouraging the Retailer to go directly to Advantus' factories to procure the products OttLite, Inc. had been having manufactured to OttLite, Inc.'s design specifications for resale to the Retailer. Specifically, the email states that if Egan did not receive the $18,000 in bonus money he alleges OttLite, Inc. owes him before December 4, 2023, he will send an email to the Retailer and "other[s] to follow" disclosing details regarding OttLite, Inc.'s Pricing and Factory Information. Egan included a proposed email to the Retailer in his November 22,

2023 email, and the proposed email discloses confidential Pricing Information and describes how Egan can assist the Retailer in sourcing OttLite, Inc. products directly from the overseas factories OttLite, Inc. uses to manufacture its lighting products at a cost savings to the Retailer.

31.    The Retailer Egan identified by name in his November 22, 2023 email is a retailer with whom Advantus has had ongoing business relationships for years, which relationships Advantus also expanded through its acquisition of certain of OttLite, Inc.'s product lines. As set forth above, Egan had been servicing the Retailer on behalf of OttLite, Inc., for several years prior to OttLite, Inc.'s termination of his employment and he therefore has knowledge regarding the Pricing and Factory Information for the products Retailer purchased from OttLite, Inc., to specifically include: the factory manufacturing certain products for OttLite, Inc. (and now Advantus); how much OttLite, Inc. paid the factory on a unit cost basis (and now how much Advantus is paying); and how much Retailer is paying Advantus per unit.

32.    Advantus itself has never shared any Pricing or Factory Information with Egan. Egan was no longer even an OttLite, Inc. employee by the time Advantus engaged in its acquisition of certain OttLite, Inc. assets.

33.    If Egan uses and discloses Advantus' Pricing or Factory Information as threatened, it will cause irreparable harm to certain of Advantus' business

relationships with its customers and Advantus' business at large because Advantus' Pricing Information (including variations in pricing among customers) and Factory Information (including the capabilities and pricing paid to the factories), are highly confidential, as set forth above, and disclosure of either to Advantus' customers or competitors would allow them to undercut Advantus. Moreover, it would put Advantus at risk (as Egan explicitly threatens in his November 22, 2023 demand) to allow the Retailer to go straight to the factory and procure near identical products to those Retailer had previously bought from Advantus (and OttLite, Inc. before that).

34.    The scale of the economic harm that will be caused will be difficult, if not impossible, to calculate, and once Egan discloses the Pricing and Factory Information, the harm will be irreparable. The Retailer Egan specifically identified to which he intends to disclose details regarding the Pricing and Factory Information alone represents an estimated $11,000,000-$25,000,000 in anticipated annual revenue relating only to the OttLite product lines Advantus acquired (exclusive of other product lines Advantus sells to the Retailer). Disclosure of the Pricing and Factory Information substantially risks the loss of, among other things, Advantus' relationship with this customer. This also risks eviscerating the value of the very assets for which Advantus paid millions of dollars to OttLite, Inc. and various of its creditors as part of the acquisition of OttLite, Inc.'s assets.

35.     As a result of Egan's conduct set forth herein, Advantus has hired the undersigned law firm, and is obligated to pay its attorneys' fees and costs in connection herewith.

36.     All conditions precedent to the maintenance of the claims asserted herein have been complied with, have occurred in fact or by operation of law, or have been waived.

**COUNT I**
**MISAPPROPRIATION OF TRADE SECRETS**
**UNDER THE DEFEND TRADE SECRETS ACT**

37.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 36 above as if set forth fully herein.

38.     The Defend Trade Secrets Act, 18 U.S.C § 1831, *et seq.* (the "DTSA"), provides for injunctive relief to address any actual or threatened misappropriation of trade secrets. 18 U.S.C. § 1836(b)(3).

39.     Advantus owns and possesses trade secrets as defined in the DTSA and other confidential information and, as more particularly described herein, Advantus has taken steps to protect the secrecy of that information.

40.     Specifically, the Pricing and Factory Information are trade secrets related to Advantus' services that are used in, or intended for use in, interstate and/or foreign commerce.

41.    The Pricing and Factory Information are not generally known or readily ascertainable through proper means, and Advantus derives independent economic value from the Pricing and Factory Information by virtue of their secrecy. OttLite, Inc. maintained and Advantus now maintains reasonable measures to ensure the secrecy of this information, including, without limitation, by disclosing the Pricing and Factory Information only to those who need to know the information, and through the use of confidentiality agreements and password-protected systems.

42.    As a former high-level OttLite employee, Egan was privy to various trade secrets that now belong to Advantus, including the Pricing and Factory Information.

43.    Egan knows that the Pricing and Factory Information are confidential, that he has a duty to keep the information confidential, and that he has a duty not to use the information for his own purposes. Indeed, Egan has kept the information secret while performing services on OttLite, Inc.'s behalf for four years, and has only recently threatened to disclose such information in an effort to leverage Advantus into making payments to him arising out of claims he has against OttLite, Inc.

44.     Egan knows that his knowledge of Advantus' trade secrets was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.

45.     Egan has violated the DTSA by refusing to return, and intentionally threatening to disclose and misappropriate, Advantus' trade secrets solely for his own benefit and without Advantus' consent, including for the unlawful purpose of extracting money for his own benefit.

46.     At this time, damages are not sufficient to remedy Egan's unlawful, threatened disclosure and misappropriation , and if the misappropriation actually occurs, including by Egan's disclosure of Advantus' trade secrets, Advantus will suffer irreparable harm.

47.     Advantus has a substantial likelihood of success on the merits because of Egan's blatant, willful, and malicious threatened misappropriation of Advantus' trade secrets, and an injunction will not disserve the public interest.

48.     Accordingly, Advantus is entitled to injunctive relief under the DTSA to prohibit Egan's threatened disclosure and misappropriation of Advantus' trade secrets.

49.     Further, Advantus is entitled to its attorneys' fees and costs due to Egan's willful and malicious violation of the provisions of the DTSA.

WHEREFORE, Plaintiffs respectfully request the entry of a temporary restraining order and preliminary and permanent injunctive relief against Egan that enjoins him from disclosing to any other person or entity, including, but not limited to, the Retailer or any of Advantus' other customers or competitors, any of Advantus' trade secrets, including the Pricing or Factory Information, or any other proprietary information from which the Pricing or Factory Information may be derived; requiring Egan to deliver his OttLite, Inc. laptop to Advantus; awarding Advantus its attorneys' fees and costs pursuant to 18 U.S.C. § 1836(b)(3)(D); and such other and further relief as the Court deems just and proper.

## COUNT II
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

50.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 36 above as if set forth fully herein.

51.    Injunctive relief is appropriate to arrest a threat of intentional tortious interference with a business relationship.

52.    Egan has threatened and continues to threaten to interfere with at least one specific, identifiable relationship, i.e., the Retailer. The Retailer had an existing relationship with OttLite, Inc. and now has one with Advantus, of which relationship Egan is aware, and Egan, in an effort to extort money from Advantus, has threatened to interfere with the ongoing business relationship: (1) by disrupting Advantus' relationship the Retailer by offering to help the Retailer

directly source Advantus' OttLite product sales from the overseas factories instead of from Advantus, and (2) providing the Retailer with details of the Pricing and Factory Information. Egan's sole purpose for interfering with the Retailer is to cause Advantus untold and substantial economic harm unless Advantus agrees to pay him money. Egan has further threatened to interfere with additional established Advantus customer relationships, as set forth in his November 22, 2023 email.

53.    Egan's intentional, threatened interference is unjustified. Egan has made clear that if his demands are not met, he intends to interfere with Advantus' ongoing relationship with the Retailer and to disclose Advantus' proprietary information to the Retailer, followed by other customers, for the express purpose of causing significant economic harm to Advantus. Egan would not personally benefit from carrying out his threatened interference, which would solely create harm to Advantus and its newly formed OttLite business unit. Indeed, Egan has already drafted and sent Advantus his proposed email to the Retailer and would simply have to hit "send" on this email to cause the threatened damage.

54.    There is a reasonable probability that irreparable harm will flow from Egan's threatened actions, as the disclosure of Advantus' the Pricing and Factory Information will be irreversible and substantially detrimental to Advantus' business.

55.    Advantus has a substantial likelihood of success on the merits because of Egan's blatant, willful, and malicious threatened interference, and an injunction will not disserve the public interest.

56.    Accordingly, Advantus is entitled to injunctive relief to prevent Egan's threatened tortious interference with Advantus' advantageous business relationships including, without limitation, with the Retailer.

WHEREFORE, Plaintiffs respectfully request the entry of a temporary restraining order and preliminary and permanent injunctive relief against Egan that enjoins him from disclosing to any other person or entity, including, but not limited to, the Retailer and Advantus' other customers and competitors, any of the Pricing and Factory Information, or any other proprietary information from which the Pricing or Factory Information may be derived, and for such other and further relief as the Court deems just and proper.

Dated:  November 27, 2023.

**SMITH, GAMBRELL & RUSSELL, LLP**

*/s/ Nicole L. Kalkines*
ALAN S. WACHS (Lead Counsel)
Florida Bar No.: 980160
awachs@sgrlaw.com
tgreene@sgrlaw.com
dhsmith@sgrlaw.com
NICOLE L. KALKINES
Florida Bar No. 1003293
nkalkines@sgrlaw.com
dcote@sgrlaw.com
50 N. Laura Street, Suite 2600
Jacksonville, Florida 32202
Tel.: (904) 598-6110
Fax: (904) 598-6210

JASON P. STEARNS
Florida Bar No. 59550
jstearns@sgrlaw.com
ckitchell@sgrlaw.com
**SMITH GAMBRELL & RUSSELL, LLP**
201 N. Franklin Street, Suite 3550
Tampa, FL  33602
Tel.: (813) 488-2926
Fax: (813) 488-2960

*Attorneys for Plaintiffs*