# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

ADVANTUS, CORP. and
OT LIGHTING BUYER, LLC,

     Plaintiffs,

v.                          Case No. 3:23-cv-1393-MMH-PDB

MICHAEL EGAN,

     Defendant.

_____

## <u>TEMPORARY RESTRAINING ORDER</u>

**THIS CAUSE** is before the Court on Plaintiffs Advantus, Corp. and OT Lighting Buyer, LLC's Time Sensitive Motion for Temporary Restraining Order and Preliminary Injunction and Incorporated Memorandum of Law (Doc. 2; Motion).[1]  On November 27, 2023, Plaintiffs filed the Complaint (Doc. 1), in which they assert a claim for violation of the Federal Defend Trade Secrets Act (DTSA) and a Florida state law claim of tortious interference with advantageous business relationships.  <u>See generally</u> Complaint.  The same day, Plaintiffs filed the Motion, in which they seek a temporary restraining order and preliminary injunction under Rule 65 of the Federal Rules of Civil

---

[1] Although in the introductory language of Plaintiffs' Motion, they state that both Plaintiffs move for the entry of injunctive relief, the substance of the Motion appears to focus on Advantus only.   Plaintiffs should be prepared to address this at the preliminary injunction hearing.

Procedure (Rule(s)).   Specifically, Advantus requests the entry of an order precluding Defendant Michael Egan from using or disclosing confidential pricing and factory information acquired by Advantus to any person or entity. See Motion at 4.

In the Complaint, Plaintiffs allege that:

> In an effort to extort money from Advantus, Egan, a prior employee of OttLite Technologies, Inc. ("OttLite, Inc."), from which Advantus purchased certain assets as set forth herein, is threatening to immediately disclose Advantus' trade secret information to Advantus' customers and to interfere with a specific, identified customer relationship if Advantus does not pay him bonus money he alleges OttLite, Inc. owes him.

Complaint at 1.[2]   Although Egan initially threatened that he would send an email disclosing the information to one of Advantus's customers on December 4, 2023, see id. at 12, in a December 1, 2023, supplemental filing, counsel for Advantus advised the Court that Egan had "notified Advantus that he would not send anything to [the identified customer] prior to 2pm on Wednesday December 6, 2023," Supplement to the Time Sensitive Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. 13).

Advantus is "in the business of designing and manufacturing various products . . . including office supplies, arts and crafts products, luggage, tactical

---

[2] For ease of reference, the Court's citations to page numbers in documents in this record refer to the CM-ECF-stamped page numbers located at the top of each page, rather than a document's internal page numbers, if any.

gear, and luxury pool products, that it sells to retailers, wholesalers, catalogue sellers and end users throughout the Americas and the World."   Complaint at 4.   Until recently, OttLite, Inc. was "one of the leading national suppliers for desk, table, and floor lamps" in several areas of the industry, and its "products have enjoyed a 90% market share in the craft channel for over twenty (20) years," and the company "has been successful in selling table lamps to major retailers."   See Declaration of Doug May (Doc. 1-3; May Declaration) at 2.   On October 25, 2023, Advantus acquired certain assets of OttLite, Inc. through a wholly owned subsidiary, OT Lighting Buyer, LLC.   See Complaint at 4.   The assets Advantus purchased included OttLite, Inc.'s "proprietary and confidential data and information relating to [its] customers, products, and accounts," including "price lists, product development, sales histories, and price quotes," (Pricing Information) along with "information regarding the capabilities of OttLite, Inc.'s factories used for manufacturing lighting products and the cost of manufacturing such products" (Factory Information).   See id. at 5–6.   The business of OttLite, Inc. now continues to operate as OttLite, a business within the Advantus corporate structure.   May Declaration at 2.   Plaintiffs allege that the information acquired from OttLite, Inc. is "highly confidential," that it derives significant economic value by virtue of that confidentiality, and that the information cannot "be determined by any publicly available means."   See Complaint at 6–7, 10.

According to Plaintiffs, OttLite, Inc. "employed Egan as a National Account Manager" for approximately four years prior to Advantus's acquisition of OttLite, Inc.'s assets. Id. at 7. In this role, Egan was responsible for "sales to customers he serviced," including OttLite, Inc.'s biggest customer, which Advantus refers to in its filings as "the Retailer."[3] Id. at 7–8. Plaintiffs allege that while Egan worked for OttLite, Inc., he received limited access to the Pricing and Factory Information for the customers he serviced on a "need to know" basis, "and solely for the purpose of Egan negotiating sales to the particular customers to which the Pricing and Factory Information applied." Id. at 8–9. For this reason, OttLite, Inc. required Egan to sign a Confidentiality Agreement regarding this information, and instructed him that the information "was to be kept confidential." Id. at 9–10. In addition, Plaintiffs present evidence that OttLite, Inc. kept "its Factory and Pricing Information confidential," and that it "did not share [this information] publicly, with competitors, or among customers." See May Declaration at 3. OttLite, Inc. also did not disclose the information to Advantus during its purchase negotiations until Advantus "executed an appropriate nondisclosure

---

[3] Plaintiffs redacted the identity of the Retailer as well as the confidential information from the Declarations and requested leave to file the unredacted Declarations under seal. See Complaint at 8 n.2. The Honorable Patricia D. Barksdale, United States Magistrate Judge, granted Advantus's motion to file the unredacted Declarations under seal, and directed Advantus to do so by December 4, 2023. See generally Order (Doc. 9), entered November 30, 2023. Advantus filed the unredacted Declarations (Docs. 10 and 11) under seal on December 1, 2023.

agreement." See id. at 5.  Having purchased certain assets of OttLite, Inc., Advantus continues the efforts to keep this information confidential.  See Complaint at 6; see also May Declaration at 6 (stating that "Advantus uses all of [the] same measures to protect this information").

According to Plaintiffs, OttLite, Inc. terminated Egan's employment on September 22, 2023, and requested that Egan return his company-issued laptop containing the Pricing and Factory Information.  Complaint at 11.  Egan refused to return the laptop.  Id.  Before Advantus purchased OttLite, Inc.'s assets, Egan filed a lawsuit against OttLite, Inc. in which he asserted that the company had failed to pay him $18,000 in bonus money.[4]  Id.  OttLite, Inc. did not appear and defend in that action, and "Egan obtained a default final judgment for approximately $18,000 against" OttLite, Inc.  Id.

Plaintiffs contend that on October 20, 2023, Egan sent an email to Advantus's President, Kevin Carpenter, in which Egan asserted that OttLite, Inc. owed him $18,912, and that "'now that Advantus owns OttLite, Advantus inherits this problem and lawsuit.'"  Id.  He then stated that he would "drop his lawsuit" and return the laptop "if Advantus paid him the claimed OttLite, Inc. bonus by the end of October."  Id. at 12.  On October 26, 2023, Egan sent another email, copying Carpenter, to "a former member of OttLite, Inc.'s senior

---

[4] Egan did not name Advantus as a party in his lawsuit.  Id. at 12.

management" stating, "'[o]ne way or another I will get the money owed to me.'" Id.

On November 22, 2023, Egan sent a third email to "two former members of OttLite, Inc.'s senior management" who by then worked for Advantus, stating that if he does not "receive the $18,000 in bonus money . . . before December 4, 2023, he will send an email to the Retailer" and others disclosing the Pricing and Factory Information.  Id.[5]  Egan also attached a draft of this proposed email.  Id. at 12–13.   According to Plaintiffs, the draft email "discloses confidential Pricing Information and describes how Egan can assist the Retailer in sourcing OttLite, Inc. products directly from the overseas factories" it uses. Id. at 13.[6]  Plaintiffs maintain that disclosure of the Pricing and Factory Information will cause irreparable harm to Advantus's business relationships with certain customers because disclosure of the information would allow Advantus's customers and competitors "to undercut Advantus" on lighting products previously sold by OttLite, Inc. and allow retailers to go directly to the factory to purchase products they would have purchased "from Advantus (and OttLite, Inc. before that)."[7]  Id. at 13–14.   Plaintiffs also allege that Advantus

---

[5] As noted previously, Egan has since advised Advantus that he will not contact the Retailer before 2 p.m. on December 6, 2023.  See Supplement to the Time Sensitive Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. 13).

[6] The Court's review of the sealed, unredacted Carpenter Declaration confirms Advantus's description of the content of Egan's draft email.  See Declaration of Kevin Carpenter (Doc. 10) at 36–37.

[7] It is unclear whether these products are sold by Advantus or the OttLite business

must keep individual customer pricing information confidential because Advantus's customers "themselves also mandate" its confidentiality to avoid revealing their profit margins to the public.  See id. at 6.  Advantus supports the allegations in the Complaint with specific facts, and verifies them by attaching to the Complaint the declarations of Kevin Carpenter, the President of Advantus, and Doug May, the former Vice President of Sales at OttLite, Inc. who is now the Vice President of Sales at OttLite, which he describes as "a business within the Advantus corporate structure."  See generally Declaration of Kevin Carpenter (Doc. 1-2; Carpenter Declaration); May Declaration.

Having considered the Complaint, Motion, and Declarations, and in accordance with Rule 65(b) and Local Rule 6.01, United States District Court, Middle District of Florida (Local Rule(s)), the Court makes the following findings for purposes of resolving this Motion:[8]

1.    This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiffs assert a claim against Egan under a federal statute, the DTSA.

2.    This Court has supplemental jurisdiction over Plaintiffs' claim for tortious interference pursuant to 28 U.S.C. § 1367 because the state law

---

unit.

[8] These findings are based solely on Plaintiffs' pleadings and declarations.  As such, they are subject to change once Egan has appeared and presented his version of these events.

claim is so related to the DTSA claim that the two claims form part of the same case or controversy.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims are alleged to have occurred in this District.   See Complaint at 3–4.

4. This Court has personal jurisdiction over Egan because Egan is a resident of the State of Florida and is alleged to have engaged in the conduct set forth above in Florida.   See id. at 3; Fla. Stat. § 48.193.

5. It is within the Court's discretion whether to grant injunctive relief.   All Care Nursing Serv. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989).   In order for a court to grant injunctive relief, a movant must show: (1) the movant has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered if the injunction does not issue; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction will cause the opposing party; and (4) the proposed injunction would not be adverse to the public interest.   Id.; see also Gonzalez v. Governor of Ga., 978 F.3d 1266, 1270–71 (11th Cir. 2020).

6. Plaintiffs assert a claim against Egan for violating the DTSA.   "To establish a violation of the DTSA, a plaintiff must show (1) it owns a valid trade secret; (2) the trade secret relates to a product or service used in, or intended for use in, interstate commerce; and (3) a defendant

misappropriated that trade secret." <u>Healthcare Res. Mgmt. Grp., LLC v.</u> <u>EcoNatura All Healthy World, LLC</u>, No. 9:20-cv-81501-Matthewman, 2021 WL 4989941, at *11 (S.D. Fla. Oct. 27, 2021).[9]   The DTSA specifically provides for injunctive relief "to prevent any actual <u>or</u> <u>threatened</u> misappropriation."   18 U.S.C. § 1836(b)(3)(A)(i) (emphasis added); <u>see also</u> <u>Hayes Healthcare Servs., LLC v. Meacham</u>, No. 19-60113-CIV-COHN/SELTZER, 2019 WL 2637053, at *3 (S.D. Fla. Feb. 1, 2019).   Under the DTSA, misappropriation includes the "disclosure or use of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret[.]"   18 U.S.C. § 1839(5).   The DTSA defines a trade secret as "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, [or] compilations . . . whether tangible or intangible, and whether or how stored, compiled, or memorialized" if "the owner has taken reasonable measures to keep such information secret" and "the

---

[9] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority.   <u>See</u> <u>Stone v. First Union Corp.</u>, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information."   18 U.S.C. § 1839(3).

7. Based on the allegations in the Complaint, as verified and supported by the Declarations, the Court finds that Plaintiffs have established a substantial likelihood of success on the merits of their DTSA claim against Egan.[10]  Specifically, Plaintiffs have made a sufficient showing that the Pricing and Factory Information constitute trade secrets, the owners of which have taken reasonable measures to protect the secrecy of, which relate to products or services used in interstate commerce, and which Egan has improperly retained and threatens to disclose.[11]

8. Plaintiffs also assert a claim for tortious interference with their business relationships.  See Complaint at 18.   Under Florida law, "[t]he elements

---

[10] Consistent with temporary restraining order practice, this finding is based solely on Plaintiffs' Complaint and Declarations and is made for the purpose of resolving the Motion. This conclusion does not foreclose any argument at the hearing on the motion for preliminary injunction that Plaintiffs cannot establish a substantial likelihood of success on the merits.

[11] It is not entirely clear to the Court whether the OttLite business unit is a separate business entity that now controls or owns the Pricing and Factory Information, or whether Advantus now owns that information.  Nor is the specific role of OT Lighting, LLC clear to the Court.  This matters because it is the owner of a trade secret that can assert a claim under the DTSA, and it is that party that must show that it will suffer irreparable harm.  For purposes of entering this TRO, the Court finds that either Advantus or OT Lighting Buyer, LLC owns the trade secrets, and that disclosure of the trade secrets would be substantially likely to cause irreparable harm.  At the preliminary injunction hearing, however, Plaintiffs must be prepared to clarify the ownership and business structure at issue as well as the party that will suffer the harm.

of tortious interference with a business relationship are '(1) the existence of a business relationship . . . (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship.'" See Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 814 (Fla. 1994) (quoting Tamiami Trail Tours, Inc. v. Cotton, 463 So. 2d 1126, 1127 (Fla. 1985)).

9.   The Court finds that Advantus has established a likelihood of success on the merits of its claim for tortious interference with business relationships.   Specifically, Advantus has sufficiently established the existence of a business relationship with the Retailer, that Egan knew about this business relationship, that Egan is attempting to intentionally and unjustifiably interfere with this relationship, and that the interference will cause damage to Advantus.   See id.

10.   As to the question of irreparable harm, Plaintiffs have made a sufficient showing based on the facts alleged, as supported by the Declarations, that the disclosure the Pricing and Factory Information would result in irreparable harm.   See TruTemp Refrigeration & Com. Climate, LLC v. Mowbray, No. 1:23-cv-667-ECM, 2023 WL 8004818, at *6 (M.D. Ala. Nov. 17, 2023) (concluding that the plaintiff's injury attributable to the theft and use of its trade secrets "cannot be undone through monetary remedies

alone and thus constitutes irreparable injury" because the plaintiff "stands to lose its competitive market advantage and customer base") (collecting cases).   Plaintiffs have further made a sufficient showing that disclosure of the Pricing and Factory Information is substantially likely to cause irreparable harm to Advantus and its OttLite business unit's customer relationships as well as Advantus's goodwill across the various product lines.[12]   See BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC, 425 F.3d 964, 970 (11th Cir. 2005) ("Although economic losses alone do not justify a preliminary injunction, 'the loss of customers and goodwill is an irreparable injury.'" (quoting Ferrero v. Associated Materials Inc., 923 F.2d 1441, 1449 (11th Cir. 1991))). Finally, Plaintiffs have presented facts sufficient to demonstrate that the harm they seek to avoid would be irreparable because once Egan discloses the information—as he is allegedly threatening to do, see Carpenter Declaration at 7—the information cannot be un-disclosed.

11.   Plaintiffs assert that prior notice to Egan cannot be given because "all Egan needs to do to cause the irreparable harm he threatens is to hit send on an email" that he has already drafted.   Motion at 3.   In light of Egan's alleged threats to disclose the Pricing and Factory Information, the Court

---

[12] See Carpenter Declaration at 8–9.

is satisfied that notice and a hearing in accordance with Rules 4 and 65, as well as the Court's Local Rules, should not be required prior to the issuance of this Temporary Restraining Order because it is impractical due to the imminent threat of irreparable injury.

12.    The Court finds that the harm from the threatened injury if the requested relief is not granted outweighs any harm the injunction would cause Egan.   Indeed, it is not clear how any harm would result to Egan from the entry of an injunction prohibiting him from using or disclosing trade secrets that appear to belong to Advantus or OT Lighting Buyer, LLC. The short duration of a restraining order further undercuts the likelihood of harm to Egan.

13.    The Court also finds that entry of an injunction in this case would serve the public's interest in protecting business entities from the misappropriation of confidential information and trade secrets.   See Pharmerica, Inc. v. Arledge, No. 8:07-cv-486-T-26MAP, 2007 WL 865510, at *9 (M.D. Fla. Mar. 21, 2007) ("The public has an interest in protecting business from theft of confidential information.").

14.    In light of the foregoing, the Court concludes that Plaintiffs have satisfied the requirements of Rule 65(b) as well as Local Rule 6.01.

Therefore, the Court finds that a Temporary Restraining Order should issue to preserve the status quo.   In issuing this Temporary Restraining Order,

the Court recognizes that Egan has not yet been given an opportunity to be heard and emphasizes that it is not making a final decision on any request for further preliminary injunctive relief.  However, the Court is convinced that issuing the Temporary Restraining Order until a full hearing can be held on Plaintiffs' request for preliminary injunctive relief is the lawful and proper course of action.

Accordingly, it is

**ORDERED:**

1. Plaintiffs' Time Sensitive Motion for Temporary Restraining Order and Preliminary Injunction and Incorporated Memorandum of Law (Doc. 2) is **GRANTED in part**.

    a. The Motion is **GRANTED** to the extent that the Court enters a Temporary Restraining Order as set forth here.

    b. In all other respects, the Motion is **TAKEN UNDER ADVISEMENT**.

2. Defendant Michael Egan, his agents, successors, and assigns, and any persons in active concert or participation with any of them, who receive actual notice of this Temporary Restraining Order (the Enjoined Parties) are **immediately enjoined** from disclosing to any other person or entity any confidential information belonging to Plaintiffs, whether such information was derived from Advantus

or OttLite, Inc., in any form, whether written, verbal, or otherwise, including but not limited to (a) the Pricing Information, any and all information relating to, referring to, or showing the pricing of any Advantus or OttLite products, or any other data from which such Pricing Information could be derived, such as, without limitation, sales histories, order histories, or any other compilations of sales or product data, and (b) the Factory Information, any and all information relating to, referring to, or showing the capabilities and pricing of Advantus's or OttLite's factories, or any data from which such Factory Information could be derived.

3. The Enjoined Parties are further **immediately enjoined** from accessing or otherwise using the laptop OttLite, Inc. issued to Michael Egan.

4. Plaintiffs shall post good and sufficient security in the form of a surety bond with the Clerk of the Court in the amount of **EIGHTEEN THOUSAND DOLLARS ($18,000.00)** for the payment of such costs and damages as may be incurred or suffered should it later be determined that Defendant was wrongfully enjoined or restrained. This directive is without prejudice to Plaintiffs or Defendant Egan seeking an adjustment to the bond amount at the preliminary injunction hearing.

5.      The requirements of this Temporary Restraining Order shall be **effective immediately** upon entry.  However, should Plaintiffs fail to comply with the posting of security with the Clerk, as directed by paragraph 4, **by 5:00 p.m., Thursday, December 7, 2023**, this Temporary Restraining Order shall no longer be in effect.

6.      Plaintiffs are directed to comply with Local Rule 6.01(c) and immediately effect service of process on Defendant in accordance with Rule 4, and to provide Defendant with all of the materials required by the Local Rules.  Plaintiffs are under a continuing obligation to notify and serve any papers subsequently filed with the Court on Defendant until the preliminary injunction hearing or Defendant files a notice of appearance, whichever occurs first.

7.      Defendant shall file his response to the Motion, including all counter or opposing affidavits and a memorandum of legal authority, within **seven (7) calendar days** of service.

8.      Plaintiffs may file a reply to Defendant's response no later than **11:00 p.m. on December 14, 2023**.

9.      This Temporary Restraining Order shall remain in full force and effect until **11:59 p.m. on Monday December 18, 2023**, unless extended or sooner dissolved.

10.   A **hearing** as to whether this Temporary Restraining Order should

be converted into a preliminary injunction will be held on **Monday,**

**December 18, 2023**, at **1:00 p.m.**, in Courtroom 10B, Tenth Floor,

United States Courthouse, 300 North Hogan Street, Jacksonville,

Florida.[13]   Counsel shall appear in person.

   **DONE AND ORDERED** in Jacksonville, Florida on December 4th, 2023,

at 2:20 p.m.

**MARCIA MORALES HOWARD**
United States District Judge

lc31
Copies to:

Counsel of Record

---

[13] All persons entering the Courthouse must present photo identification to Court Security Officers.  Although cell phones, laptop computers, and similar electronic devices generally are not permitted in the building, attorneys may bring those items with them upon presentation to Court Security Officers of a Florida Bar card (presentation of the Duval County Courthouse lawyer identification card will suffice) or Order of special admission pro hac vice. However, all cell phones must be turned off while in the courtroom.